UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JORDAN RANDOLPH,

                        Plaintiff,

                                                                                    DECISION AND ORDER

                                                                                    08-CV-6245L

                  V.

M. SIMMONS,
Institutional Steward,
DONALD SELSKY,
Director Special Housing Inmate
Disciplinary Program, in their
Individual Capacities,

                        Defendants.
_____

Plaintiff, Jordan Randolph, appearing *pro se*, commenced this action under 42 U.S.C. § 1983. Plaintiff, an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), alleges that his constitutional rights have been violated in a number of respects in connection with a disciplinary hearing that was held in January 2007, while plaintiff was confined at Gowanda Correctional Facility. Plaintiff has sued Mark Simmons, who presided over the hearing, and Donald Selsky, the Director of Special Housing/Inmate Disciplinary Program. Defendants have moved for summary judgment.

**BACKGROUND**

Plaintiff was charged by Correction Officer ("C.O.") S. Bauer with a violation of DOCS Rule 116.10 ("An inmate shall not lose, destroy, steal, misuse, damage or waste any type of state

property"), based on Bauer's alleged discovery of more than one state-issued razor blade in plaintiff's cell. The hearing on that charge began on January 22, 2007.

Plaintiff acknowledged that inmates were to have no more than one razor blade at a time, and that the proper procedure for obtaining a new blade was to turn in the old one to a C.O., to exchange for a replacement. He contended, however, that Bauer had planted a second blade in his cell.

At the conclusion of the hearing, Simmons found plaintiff guilty, and sentenced him to three months in the Special Housing Unit ("SHU"), along with the loss of privileges and good time. On plaintiff's administrative appeal, the Disciplinary Review Committee modified plaintiff's date of release from SHU, and defendant Selsky subsequently affirmed Simmons's decision. Plaintiff commenced this action on June 6, 2008. Plaintiff alleges that defendants have violated his right to due process and his right to be free from cruel and unusual punishment, in a number of ways, as set forth below.

## DISCUSSION

Plaintiff contends that the written charge against him was defective because it did not describe the alleged violation in sufficient detail. Plaintiff contends that this hampered his ability to prepare and present a defense to the charge.

A prison inmate who is charged with a violation is entitled, as a matter of due process, to be provided with enough factual detail to allow him to understand the nature of, and basis for the charge, so that he can mount a defense. *See Sira v. Morton*, 380 F.3d 57, 73-74 (2d Cir. 2004); *United States v. Abuhamra*, 389 F.3d 309, 326 (2d Cir. 2004). The Court of Appeals for the Second Circuit has described these requirements as "minimal." *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir. 1993) (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)).

Contrary to plaintiff's assertions, Bauer's misbehavior report did set forth the factual basis for the charge. *See* Dkt. #25-7 Ex. A. Plaintiff's contention that the charge was so vague that he was

unable to present a defense is also belied by the hearing transcript, at which plaintiff disclaimed possession of the razor blade, and claimed that it had been planted in his cell by Bauer. *See* Dkt. #25-7 Ex. D. In addition, although plaintiff complained that the misbehavior report failed to state how plaintiff was alleged to have obtained the razor blade, that was not necessary to support the charge against plaintiff. This claim, then, is simply meritless.

Plaintiff also contends, in sum and substance, that the evidence presented at the hearing was insufficient to support Simmons's finding of guilt. This claim likewise fails.

To withstand constitutional scrutiny, "prison discipline decisions ... must be 'supported by some evidence in the record.'" *Sira*, 380 F.3d at 76 (citing *Superintendent v. Hill*, 472 U.S. 445, 454 (1985)). The relevant question in reviewing such decisions is "whether there is any evidence in the record that could support the conclusion reached" by the hearing officer. *Id.* (citing *Hill*, 472 U.S. at 455-56). Having reviewed the transcript and record of plaintiff's disciplinary hearing, I conclude that the evidence before Simmons easily met that standard.

Plaintiff further asserts that the hearing was untimely. While I do not believe that it was, *see* Disciplinary Hearing Extension Request (Dkt. #25-7 Ex. E), "[f]ederal constitutional standards rather than state law define the requirements of procedural due process." *Shell v. Brzezniak*, 365 F.Supp.2d 362, 376 (W.D.N.Y. 2005) (internal quotation marks omitted). Plaintiff has not shown that the very modest delay here in any way infringed upon his constitutional rights.

Next, plaintiff complains that he was denied a certain witness, C.O. Clark. Apparently plaintiff wanted to elicit testimony from Clark that no other inmates in the area were missing a razor blade, to support his defense that the blade in question had been planted in his cell by Bauer. Simmons denied plaintiff's request to call Clark, on the ground that any testimony she might give would have been irrelevant, since Clark had no personal knowledge of the facts surrounding the presence of an unauthorized razor blade in plaintiff's cell.

Although a New York inmate has a due process right to call witnesses, see 7 N.Y.C.R.R. § 254.5(b), that right is not absolute. *See Ponte v. Real*, 471 U.S. 491, 495 (1985); *Wolff v.*

*McDonnell*, 418 U.S. 539, 566 (1974). "Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority .... " *Ponte*, 471 U.S. at 496 (quoting *Wolff*, 418 U.S. at 566). A hearing officer may also refuse to call a witness "on the basis of irrelevance or lack of necessity." *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 30 (2d Cir. 1991); *see also Scott v. Kelly*, 962 F.2d 145, 146-47 (2d Cir. 1992) ("It is well settled that an official may refuse to call witnesses as long as the refusal is justifiable").

"Prison hearing officers, then, have the discretion to keep hearings within reasonable limits, and included within that discretion is the authority to refuse to call witnesses whose testimony the prison official reasonably regards as duplicative or non-probative." *Eleby v. Selsky*, 682 F.Supp.2d 289, 291-92 (W.D.N.Y. 2010) (citing *Russell v. Selsky*, 35 F.3d 55, 55-59 (2d Cir. 1994). At the same time, however, "prison officials may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify ... ." *Ponte*, 471 U.S. at 497. They need not give a detailed explanation, however, and "may do so ... by making the explanation a part of the 'administrative record' in the disciplinary proceeding ... ." *Id.*

"In addition, to establish a procedural due process claim in connection with a prison disciplinary hearing, an inmate must show that he was prejudiced by the alleged procedural errors, in the sense that the errors affected the outcome of the hearing." *Eleby*, 682 F.Supp.2d at 292. *See Powell v. Coughlin*, 953 F.2d 744, 750 (2d Cir.1991) (stating that "it is entirely inappropriate to overturn the outcome of a prison disciplinary proceeding because of a procedural error without making the normal appellate assessment as to whether the error was harmless or prejudicial").

Plaintiff cannot establish a valid constitutional claim in this regard. Clark's testimony, at best, would have been tangential to the charge against plaintiff, and plaintiff has not shown that the result of his hearing would likely have been different had Clark testified. Simmons set forth an adequate basis for his refusal to call Clark as a witness, and I find that he did not abuse his discretion in that regard.

Plaintiff's contention that he was denied the right to present documentary evidence is similarly without merit. Plaintiff sought to obtain copies of his past "frisk slips," reflecting past searches of plaintiff and his cell, to show that he had been harassed by the C.O.s in his area. Simmons properly denied that request on the ground that this evidence concerning past events would have been irrelevant to whether plaintiff had been in possession of more than one razor blade on the date in question. Again, I see no abuse of discretion by the hearing officer, nor would this evidence likely have changed the outcome of the hearing.

Plaintiff next contends that he was denied adequate assistance prior to the hearing. While it does not appear that plaintiff raised this issue at the hearing itself, this claim is meritless in any event. The basis for this claim is that his assistant failed to obtain plaintiff's past frisk slips, but as stated, Simmons properly disallowed that evidence anyway. Thus, regardless of whether plaintiff received adequate assistance in this regard, he cannot show any prejudice. *See Clyde v. Schoellkopf*, 714 F.Supp.2d 432, 437 (W.D.N.Y. 2010) ("even assuming *arguendo* that plaintiff was not provided with adequate assistance ..., there is no basis in the record upon which a factfinder could conclude that plaintiff was prejudiced as a result"). *See also Chavis v. vonHagn*, No. 02-CV-0119, 2009 WL 236060, at *53 (W.D.N.Y. Jan. 30, 2009) (plaintiff's claims that he was denied an employee assistant to prepare for his disciplinary hearings failed, since the record established that "plaintiff was indeed able to present evidence (and often did), both oral and documentary, in his own defense") (citing *Wolff v. McDonnell*, 418 U.S. 539 (1974)).

Plaintiff also contends that the penalty imposed by Simmons was excessive, in violation of plaintiff's rights under the Eighth Amendment. This claim is meritless on its face. There is no showing that the sentence imposed was unlawful or atypical. Plaintiff does not allege that his conditions of confinement were unusually harsh, and even if they were, there is no indication that either defendant had any personal involvement with respect to those conditions. *See Pilgrim v. Artus*, No. 9:07-CV-1001, 2010 WL 3724883, at *9 (N.D.N.Y. Mar. 18, 2010) (prisoner's placement on keeplock and denial of privileges for three thirty-day and one forty-five day periods

was "not so severe as to violate the Eighth Amendment's ban on cruel and unusual punishment"), *Report and Recommendation Adopted*, 2010 WL 3724881 (N.D.N.Y. Sept. 17, 2010); *Calvert v. State of New York*, No. 02-CV-6194, 2009 WL 3078864, at *10 (W.D.N.Y. Sept. 24, 2009) (three thirty-day SHU sentences, imposed after inmate was found guilty on three separate occasions of refusing a direct order, did not violate the Eighth Amendment).

Plaintiff's claim that his rights were violated because he was placed in mechanical restraints during the hearing requires little comment. Prisoners are subject to greater restraints on their liberty than ordinary citizens, *Grinter v. Knight*, 532 F.3d 567, 573 (6th Cir. 2008), and the use of restraints on plaintiff did not violate any of plaintiff's constitutional rights. *See Claudio v. Herbert*, No. 01-CV-0120, 2005 WL 327106, at *10 (W.D.N.Y. Feb. 10, 2005) ("Because plaintiff does not have a constitutional right to be present at his disciplinary hearing, he cannot claim a right to be unencumbered by mechanical restraints if physically present during his disciplinary hearing"); *Dixon v. Goord*, 224 F.Supp.2d 739, 748 (S.D.N.Y. 2002) ("[r]estraints on an inmate do not violate the amendment unless they are totally without penological justification, grossly disproportionate, or involve the unnecessary and wanton infliction of pain") (quoting *Smith v. Coughlin*, 748 F.2d 783, 787 (2d Cir. 1984)) (additional internal quotation marks omitted).

Plaintiff alleges that Simmons was biased against him, and that the result of the hearing was preordained. Simmons's statement during the hearing that "It's [*i.e.* the charge against plaintiff] gonna hold. There's no question," *see* Dkt. #25-7 Ex. D at 7, read in context, clearly meant only that Simmons had rejected plaintiff's assertion that the charge should be dismissed because there was no proof that plaintiff had stolen the contraband razor. As Simmons explained, the charge was not that plaintiff had stolen anything, but that he was in possession of state property to which he was not entitled.

Aside from that, plaintiff's claim of hearing officer bias amounts to little more than a conclusory assertion, based on the bundle of other claims that plaintiff has made about the hearing, none of which have any merit. That Simmons denied some of plaintiff's requests, and ultimately

found him guilty, does not demonstrate bias on Simmons's part. *See Francis v. Coughlin*, 891 F.2d 43, 47 (2d Cir. 1989) ("a plaintiff-inmate armed with nothing more than conclusory allegations of bias and prejudgment should not be able to defeat a well-supported motion for summary judgment"); *Wright v. Conway*, 584 F.Supp.2d 604, 609 (W.D.N.Y. 2008) (prisoners "own subjective belief that [hearing officer] was biased ... is not enough to create a genuine issue of fact").

Finally, since plaintiff's rights were not violated in connection with the hearing, there is no basis upon which to impose liability upon Selsky, based upon his affirmance of Simmons's decision. *See Durran v. Selsky*, 251 F.Supp.2d 1208, 1215 (W.D.N.Y. 2003) ("Since plaintiff cannot make out a due process claim against Cerio, however, his claim against Selsky [who affirmed Cerio's decision] is equally groundless"); *Black v. Selsky*, 15 F.Supp.2d 311, 318 (W.D.N.Y. 1998) ("because Black's claims against Ryan are meritless and Selsky's alleged wrongdoing was based on his affirming Ryan's determination, there is no basis for the claims against Selsky either").

## CONCLUSION

Defendants' motion for summary judgment (Dkt. #25) is granted, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
November 29, 2010.